MariRuth Petzing, OSB No. 135412
mpetzing@oregonlawcenter.org
Mara Bauermeister, OSB No. 223520
mbauermeister@oregonlawcenter.org
Stephen S. Walters, OSB No. 801200
swalters@oregonlawcenter.org
David Henretty, OSB No. 031870
dhenretty@oregonlawcenter.org
Monet Gonnerman, OSB No. 224045
mgonnerman@oregonlawcenter.org
OREGON LAW CENTER
621 SW Morrison, Suite 1450
Portland, Oregon 97205

Of Attorneys for Plaintiff, Gerson Molina Orantes

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| GERSON MOLINA ORANTES, | Case No. 3:25-cv-01541-JR |
| Plaintiff, | |
| v. | **PLAINTIFF GERSON MOLINA ORANTES' MOTION TO COMPEL THE DEPOSITION OF SHERIFF MORRISEY O'DONNELL** |
| JOHN DOES 1-13 and MULTNOMAH COUNTY, | |
| Defendants. | Oral Argument Requested |

**LR 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1, the undersigned certifies that Plaintiff has conferred with Defendant Multnomah County ("Defendant") by phone on May 7, 2026, regarding Plaintiff's request to depose Sheriff Morrisey O'Donnell ("the Sheriff"), but the parties were unable to reach an agreement.

Page 1 – PLAINTIFF GERSON MOLINA ORANTES' MOTION TO COMPEL THE
        DEPOSITION OF SHERIFF MORRISEY O'DONNELL

**INTRODUCTION**

The Multnomah County Sheriff has direct, personal knowledge of facts at issue in this case. Defendant's other witnesses have been unable to answer questions about the Sheriff's involvement. Plaintiff requests that the Court order Defendant to produce Sheriff Morrisey O'Donnell for a two-hour deposition at the Sheriff's earliest convenience.[1]

**BACKGROUND**

Defendant incarcerated Plaintiff Gerson Molina Orantes under an Intergovernmental Agreement between the Multnomah County Sheriff's Office ("MCSO") and the United States Marshals Service ("USMS"). (Compl. ¶¶ 26-31, ECF 1.) Judge Baggio ordered Plaintiff's release from custody on April 24, 2025, and Plaintiff had no other outstanding charges or warrants. (*Id.* ¶¶ 34-37.) Despite the court order, Defendant rebooked Plaintiff into custody, and imprisoned him until April 25, 2025, when he was transferred into federal custody for the purposes of immigration enforcement. (*Id.* ¶¶ 39-57.) Plaintiff filed this lawsuit, alleging that he was illegally imprisoned pursuant to Defendant's policy or practice of incarcerating individuals in violation of law, without a judicial warrant or probable cause and without regard to judicial release orders. (*Id.* ¶¶ 60-65.) Plaintiff alleges *Monell* claims of liability against Defendant Multnomah County for his illegal incarceration. (*Id.* at 11-12.)

Other plaintiffs, also represented by Plaintiff's counsel, filed two related cases against Defendant. (*See supra* footnote 1.) The parties agreed to coordinate discovery in the three

---

[1] The Sheriff's deposition is also relevant to *Pablo Morales v. Multnomah County*, 3:25-cv-02096-JR and *Interfaith Movement for Immigrant Justice and Portland Immigrant Rights Coalition v. Multnomah County and Multnomah County Sheriff's Office*, 25CV65095 (Multnomah County Circuit Court). The parties have agreed that deposition transcripts can be used across all three cases. In the interest of efficiency, Plaintiff only moves to compel in this case.

matters. (Gonnerman Decl. ¶¶ 2-3.) The parties have participated in a robust and generally cordial discovery process. Plaintiffs in the three cases have served Defendant with Requests for Production and Interrogatories. Defendant has so far produced 7922 pages of documents and answered 18 interrogatories with various subparts. (*Id.* ¶¶ 4-5.) Plaintiffs have deposed nine individuals, all current or former employees of the MCSO. (*Id.* ¶ 6.) Additionally, plaintiffs conducted a multi-day entity deposition under Federal Rule of Civil Procedure ("Rule") 30(b)(6). (*Id.*) Plaintiffs requested to depose Acting U.S. Marshal ("AUSM") Pete Cajigal, which the U.S. Department of Justice denied. (*See* Gonnerman Decl. Ex. 4.)

Through the discovery process, Plaintiff learned that the Sheriff was personally involved in multiple discussions regarding Plaintiff's incarceration. In May 2025, the Sheriff met with Chief Deputy Steve Alexander, Chief Deputy Stephen Reardon, and Records Manager Rebecca Child. The group reviewed documents relating to Plaintiff's incarceration and identified deficiencies in the handling of his incarceration, along with deficiencies in the cases of other MCSO prisoners. (*See* Gonnerman Decl. Ex. 8, Dep. of Stephen Reardon, April 15, 2026 ("First Rule 30(b)(6) Dep.") 137:7-138:2-25, so explaining.) Approximately one month later, in June 2025, Defendant issued a new booking policy for prisoners with federal charges. (*See id.* 138:2-139:4.) The Sheriff personally emailed the new policy to Leah Bolstad at the U.S. Attorney's Office, saying, "If you have questions, please give me a call." (Gonnerman Decl. Ex. 3 at 1.)

Plaintiff has deposed Reardon and Child, but both deponents' recollections were lacking. Reardon, testifying for Defendant, did not recall precisely when the conversation took place, could not identify the cases they discussed or how many cases they reviewed, could not say who Leah Bolstad is, and did not know what precipitated the Sheriff's email to Leah Bolstad nor whether there was, in fact, any follow-up conversation.  (*See* First Rule 30(b)(6) Dep. 137:7-

138:1, 138:23-25, 196:5-6; Gonnerman Decl. Ex. 10, Dep. of Stephen Reardon, April 29, 2026 ("Second Rule 30(b)(6) Dep.") 224:22-226:22). For her part, Rebecca Child denied any involvement in Defendant's efforts to change its policy. (*See* Gonnerman Decl. Ex. 5, Dep. of Rebecca Child ("Child Dep.") 61:20-22; 84:8-85:6.) Captain Alice Blair has been the liaison for the MCSO to the USMS at all relevant times. (*See* Gonnerman Decl. Ex. 9, Dep. of Alice Blair ("Blair Dep.") 45:18-25.) However, Captain Blair testified that she had no knowledge of the conversation between the Sheriff, Reardon, Alexander, and Child (*id.* 38:3-10) and had no role in communicating the subsequent policy change to the USMS. (*See id.* 52:19-23.) On May 8, 2026, counsel for Defendant confirmed that Defendant cannot produce any records from the May 2025 meeting that the Sheriff attended, during which Plaintiff's incarceration was discussed. (*See* Gonnerman Decl. ¶ 15.)

In July 2025, the Sheriff exchanged emails with AUSM Cajigal specifically discussing Plaintiff's incarceration. (*See* Gonnerman Decl. Ex. 1.) Email records with subject "Molina-Orantes" include an attachment reflecting the court order for Plaintiff's release. (*Id.* at 5.) The emails indicate that the Sheriff had at least one telephone or in-person conversation with AUSM Cajigal about Plaintiff. (Gonnerman Decl. Ex. 2, "Let me know if you would like to talk further on this on Tuesday," and "Information as discussed.") No one else was privy to those emails or has been able to explain their contents or the related phone or in-person conversation(s). (Child Dep. 94:6-95:16; Gonnerman Decl. Ex. 6, Dep. of Lisa Champie ("Champie Dep.") 52:3-13, 77:8-78:5; Blair Dep. 53:5-54:10, 63:8-65:15; First Rule 30(b)(6) Dep. 135:4-9.)

On April 22, 2026, the parties conferred regarding outstanding discovery issues. Plaintiff's counsel raised the need to ask the Sheriff questions related to her knowledge of the details surrounding Plaintiff's incarceration, the emails between the Sheriff and AUSM Cajigal,

and the attachments thereto. (Gonnerman Decl. ¶ 17.) Following conferral, on April 29, 2026, Reardon testified in a continuation of the entity deposition on behalf of Defendant. When asked for a second time about the emails in question, Reardon testified that he did not know how the Sheriff had come into possession of a document reflecting an order to release Plaintiff, that he did not have knowledge of a referenced conversation between the Sheriff and AUSM Cajigal regarding Plaintiff prior to July 10, 2025, and that he did not know whether there was a conversation between AUSM Cajigal and the MCSO regarding Plaintiff subsequent to July 14, 2025. (Second Rule 30(b)(6) Dep. 215:19-218:8.) Reardon further testified that only the Sheriff would have knowledge of those issues. (*Id.* 216:2-6, 217:1-2.)

Having identified relevant, material information that is within the personal knowledge of the Sheriff,[2] and having been unable to obtain the information through alternative means, on April 30, 2026, Plaintiff's counsel communicated in writing the reasons that deposing the Sheriff is necessary. (Gonnerman Decl. ¶ 19.) The parties again conferred but were unable to reach an agreement. Plaintiff served a notice of the Sheriff's deposition, scheduled for two hours on May 20, 2026. (Gonnerman Decl. Ex. 11.) Having been informed by Defendant's counsel that the Sheriff will not be made available, Plaintiff now files this motion to compel.

**LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," taking into account the

---

[2] In the interest of simplicity, Plaintiff confines the discussion of the Sheriff's personal knowledge of relevant facts to those in the instant matter. Discovery has also revealed that the Sheriff has personal knowledge of facts relevant to claims filed in the state court matter, such as conversations with AUSM Cajigal in November 2025 regarding possible changes to the Intergovernmental Agreement. Plaintiff believes that a two-hour deposition will be sufficient to address all relevant topics across the three cases.

Page 5 – PLAINTIFF GERSON MOLINA ORANTES' MOTION TO COMPEL THE
DEPOSITION OF SHERIFF MORRISEY O'DONNELL

enumerated proportionality factors listed in Rule 26(b)(1). FED. R. CIV. P. 26(b)(1). Relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Ahlman v. Barnes*, No. 8:20-cv-00835-JGB-SHK, 2021 U.S. Dist. LEXIS 80975, at *12 (C.D. Cal. Mar. 9, 2021) (citation omitted). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Alves v. Riverside Cty.*, No. 5:19-cv-02083-JGB-SHK, 2021 U.S. Dist. LEXIS 170197, at *8 (C.D. Cal. Apr. 9, 2021) (citation omitted).

"The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Id.* (citation omitted). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by prohibiting or limiting a deposition. FED. R. CIV. P. 26(c)(1). The party opposing discovery carries "a heavy burden" of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (reversing the district court's grant of a protective order and ordering the deposition of a high-level corporate official upon remand). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Alves*, 2021 U.S. Dist. LEXIS 170197, at *9 (citation omitted). "Absent extraordinary circumstances, it is rare for a court to disallow the taking of a deposition." *Id.* at *9-10 (collecting cases).

For the deposition of a high-level government official (or "apex" official), courts apply Rule 26(b)(1)'s proportionality test, taking into account the burden on an official's important public work and the frequency with which such officials are involved in litigation. Courts have

Page 6 – PLAINTIFF GERSON MOLINA ORANTES' MOTION TO COMPEL THE
     DEPOSITION OF SHERIFF MORRISEY O'DONNELL

noted that high-ranking officials could not perform their duties if not shielded from a subpoena in every active case. *See Thomas v. Cate*, 715 F. Supp. 2d 1012, 1048 (E.D. Cal. 2010). Therefore, courts consider: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Alves*, 2021 U.S. Dist. LEXIS 170197, at *10 (citation omitted). Formal exhaustion is not "an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive consideration[.]" *Id.* at *11; *see also In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC), 2025 U.S. Dist. LEXIS 54381, at *65 (N.D. Cal. Mar. 24, 2025) (explaining that the "apex" doctrine is "a sliding scale of relevance and burden, where unique knowledge and alternative methods of discovery 'form only part of a more nuanced equation'") (citation omitted).

This case does not implicate judicial review of an executive decision, sufficiency of the administrative record, nor the Administrative Procedures Act. Accordingly, a showing of agency bad faith is not required. *Cf. Cardona v. United States Dist. Court* (*In re U.S. Dep't of Educ.*), 25 F.4th 692, 699-700, n.1 (9th Cir. 2022) (explicitly disclaiming that the case is about the "apex" doctrine, discussing judicial review of agency action under the APA, and requiring a showing of bad faith to look beyond the administrative record to probe into the mental processes of administrative decisionmakers). Although one judge in this district has applied *In re U.S. Department of Education* and the bad-faith requirement to the deposition of the governor of Oregon (*see Maney v. Oregon*, No. 6:20-cv-00570-SB, 2023 U.S. Dist. LEXIS 99034, at *11 (D. Or. June 7, 2023)), that analysis runs contrary to footnote one of *In re U.S. Department of Education*. *See Pizzuto v. Derrick*, No. 1:21-cv-00359-BLW, 2025 U.S. Dist. LEXIS 228551, at *7 (D. Idaho Nov. 18, 2025) (explaining, in the context of a Section 1983 Eighth Amendment

Page 7 – PLAINTIFF GERSON MOLINA ORANTES' MOTION TO COMPEL THE
      DEPOSITION OF SHERIFF MORRISEY O'DONNELL

claim, that *In re U.S. Department of Education* "is not about apex doctrine, but rather

constitutional limitations on the federal judiciary's authority to scrutinize executive actions");

*see also In re Uber Techs., Inc.*, 2025 U.S. Dist. LEXIS 54381, at \*64-65.[3] In contrast to the line

of cases cited in *In re U.S. Department of Education*, this matter presents a standard

proportionality question under Rule 26 involving the testimony of a fact witness to a tort.

## ANALYSIS

The Sheriff's testimony is relevant to Plaintiff's case; the Sheriff has direct, personal

knowledge of the facts of this case; and Plaintiff has exhausted other less intrusive discovery

methods. Plaintiff does not need to demonstrate conclusively the extent of the Sheriff's

conversations or recollections in order to take her deposition. *See Ahlman*, 2021 U.S. Dist.

LEXIS 80975, at \*16 ("The party seeking to take such a deposition does not need to prove

conclusively in advance that the deponent definitely has unique, non-repetitive information;

instead, where a [high-ranking] officer may have any first-hand knowledge of relevant facts, the

deposition should be allowed.") (simplified).

Plaintiff alleges *Monell* claims. A *Monell* claim may rest on a showing of deliberate

indifference, which may be shown through a pattern of similar violations that provided relevant

policymakers with actual or constructive notice. *See Hyun Ju Park v. City & Cnty. of Honolulu*,

952 F.3d 1136, 1142 (9th Cir. 2020) (citations omitted). In *Oviatt v. Pearce*, a jury found that

Multnomah County, through its policymaker Sheriff Pearce, was "deliberately indifferent" to the

---

[3] Even if bad faith were a requirement, the Court should nonetheless compel the Sheriff's
deposition because Plaintiff has alleged that Defendant acted with reckless indifference to
Plaintiff's constitutional rights by having a policy or practice of blindly incarcerating prisoners
without checking whether there was any legal authority to imprison them, including
incarcerating prisoners who had been ordered released by a judge.

right of detainees because he was aware of the issue, had discussed it with colleagues, and "made the conscious choice to continue to do nothing." 954 F.2d 1470, 1472, 1477-78 (9th Cir. 1992). The Ninth Circuit affirmed, citing extensively to Sheriff Pearce's testimony. *See id.* at 1476-77.

The Sheriff's personal knowledge of existing booking problems, the lack of policy to avoid such problems, the facts of Plaintiff's case, the subsequent policy issued, and the Sheriff's communications regarding those policies, all go directly to elements at issue in this matter and are therefore relevant subjects for examination. *See id.* at 1477. Emails imply that the Sheriff had at least one phone or in-person conversation with the U.S. Marshals about Plaintiff's incarceration. (Gonnerman Decl. Ex. 2 at 1-2, "Let me know if you would like to talk further on this on Tuesday," and "Information as discussed.") The Sheriff also obtained a document reflecting the order to release Plaintiff. (Gonnerman Decl. Ex. 1 at 5.) The document appears to have a Facebook icon and does not match the format of documents from PACER nor those from the Court. Information from the Sheriff about when and how she received it will be relevant because Defendant denies receiving the Court's order to release Plaintiff.

Plaintiff's *Touhy* request to depose AUSM Cajigal has been denied (Gonnerman Decl. Ex. 4), and no one else was privy to the Sheriff's conversation(s) or email chains with AUSM Cajigal. Across the three interrelated cases noted in footnote one, the plaintiffs have conducted nine depositions, in addition to a multi-day entity deposition pursuant to Rule 30(b)(6). Plaintiff has requested information about the Sheriff's communications from multiple witnesses, who have stated that they have no knowledge. (*See* Child Dep. 94:6-95:16; Champie Dep. 52:3-14, 77:8-78:5; Blair Dep. 53:5-54:10, 63:8-65:15.) Plaintiff included "[c]ommunications between the MCSO and other law enforcement agencies . . . regarding . . . Plaintiff . . . in 2025" in the Rule 30(b)(6) matters for examination and notice of deposition (*see* Gonnerman Decl. Ex. 7 at 7), and

Plaintiff twice asked the Rule 30(b)(6) witness about the Sheriff's communications. (*See* First Rule 30(b)(6) Dep. 135:8-9, stating "I have no idea where that originated from" regarding the description of the court order.) Even after Plaintiff conferred with defense counsel about the potential need to depose the Sheriff (Gonnerman Decl. ¶ 17), the Rule 30(b)(6) witness still could not provide answers about the Sheriff's communications.[4] (Second Rule 30(b)(6) Dep. 213:1-218:8, stating "[t]he Sheriff would be the only one that would know.")

Finally, the Sheriff has ultimate authority over Defendant's policy. (*See* First Rule 30(b)(6) Dep. 16:18-22; Child Dep. 23:10-13). After Plaintiff's wrongful incarceration, the Sheriff subsequently emailed a newly adopted policy to the U.S. Attorney's Office. (Gonnerman Decl. Ex. 3); *Smith v. City of Stockton*, No. 2:15-cv-0363 KJM AC, 2017 U.S. Dist. LEXIS 44767, at *8 (E.D. Cal. Mar. 24, 2017) (explaining that, given the chief of police's involvement in adopting a policy after the incident at issue, "it is reasonable to infer that [the chief of police] was responsible for whatever officer-involved shooting policy existed at the time of the shooting, or for the lack of such a policy"). The Sheriff's testimony regarding Defendant's policies or practices, or the lack thereof, to safeguard inmates' constitutional rights goes to the heart of Plaintiff's case. *See Ahlman*, 2021 U.S. Dist. LEXIS 80975, at *11 (ordering the defendants to

---

[4] The Sheriff's personal knowledge of the underlying facts cannot be sufficiently explored through additional written discovery because of the varying subjects of the Sheriff's knowledge and Plaintiff's need to understand her answers and ask follow-up questions. *See Hernandez v. Barr*, No. EDCV 16-0620- JGB (KKx), 2019 U.S. Dist. LEXIS 169954, at *34 (C.D. Cal. Apr. 12, 2019) ("Depositions have more flexibility than interrogatories because they permit an attorney to ask follow-up questions based on answers to previous questions or repeat questions if a deponent is being evasive.") (citation omitted); *Alves*, 2021 U.S. Dist. LEXIS 170197, at *9-10 (explaining, in the context of compelling the sheriff's deposition that, "[a]bsent extraordinary circumstances, it is rare for a court to disallow the taking of a deposition" and collecting cases). Further, given that no other witness has knowledge about the Sheriff's communications, crafting responses to interrogatories would likely also require approximately two hours of the Sheriff's time.

produce the Sheriff where "Plaintiffs base their need to depose Sheriff Barnes on previous deposition testimony 'identif[ying] Sheriff Barnes as a key decision-maker with unique knowledge' and his testimony would fill the 'gaps and contradictions' by other witnesses").

Plaintiff has met his burden under Rule 26(b)(1) of showing the relevance of the testimony and the importance of the discovery in resolving the issues in controversy. Defendant cannot satisfy its subsequent heavy burden to demonstrate that good cause exists to bar the requested deposition and that specific prejudice or harm will result if Plaintiff's motion is granted. *See Smith*, 2017 U.S. Dist. LEXIS 44767, at *7 ("A busy schedule is not sufficient to meet defendants' Rule 26(c) burden, and is an insufficient basis for precluding a deposition even under the 'apex' doctrine.") (collecting cases).

Accordingly, Plaintiff requests that the Court grant Plaintiff's motion to compel. *See Alves*, 2021 U.S. Dist. LEXIS 170197, at *20 (ordering the sheriff's two-hour deposition); *Ahlman*, 2021 U.S. Dist. LEXIS 80975, at *32 (ordering the sheriff's 3.5-hour deposition); *Bryant v. Cty. of L.A.*, No. 20-cv-9582-JFW(Ex), 2021 U.S. Dist. LEXIS 206744, at *4 (C.D. Cal. Oct. 26, 2021) (ordering the sheriff's four-hour deposition); *Estate of Heath v. Pierce Cty.*, No. 3:19-cv-06119-RJB, 2021 U.S. Dist. LEXIS 71459, at *5 (W.D. Wash. Apr. 13, 2021) (granting the plaintiff's motion to compel the deposition of the retired sheriff); *Smith*, 2017 U.S. Dist. LEXIS 44767, at *16 (ordering the defendants to produce the chief of police).

## CONCLUSION

For the reasons stated herein, Plaintiff requests that the Court order Defendant to produce the Sheriff for a two-hour deposition at the Sheriff's earliest convenience.

DATED this 19th day of May, 2026.    Respectfully submitted,

/s/ *Monet Gonnerman*
Monet Gonnerman, OSB No. 224045
mgonnerman@oregonlawcenter.org
MariRuth Petzing, OSB No. 135412
mpetzing@oregonlawcenter.org
Mara Bauermeister, OSB No. 223520
mbauermeister@oregonlawcenter.org
Stephen S. Walters, OSB No. 801200
swalters@oregonlawcenter.org
David Henretty, OSB No. 031870
dhenretty@oregonlawcenter.org
OREGON LAW CENTER
621 SW Morrison, Suite 1450
Portland, Oregon 97205
Tel: (503) 473-8313

Of Attorneys for Plaintiff,
Gerson Molina Orantes

Page 12 – PLAINTIFF GERSON MOLINA ORANTES' MOTION TO COMPEL THE
DEPOSITION OF SHERIFF MORRISEY O'DONNELL

**CERTIFICATE OF COMPLIANCE**

This brief complies with the page limit or word count of Local Rule 26-3(b) because it contains 10 pages, including headings, footnotes, and quotations, but excluding the caption, signature block, exhibits, and any certificates of counsel.

DATED this 19th day of May, 2026.            Respectfully submitted,

/s/ *Monet Gonnerman*
Monet Gonnerman, OSB No. 224045
mgonnerman@oregonlawcenter.org
OREGON LAW CENTER
621 SW Morrison, Suite 1450
Portland, Oregon 97205
Tel: (503) 473-8313

Of Attorneys for Plaintiff,
Gerson Molina Orantes